[Cite as *State ex rel. Scioto Downs, Inc. v. Brunner*, 123 Ohio St.3d 24, 2009-Ohio-3761.]

THE STATE EX REL. SCIOTO DOWNS, INC. ET AL. *v.* BRUNNER,

SECY. OF STATE, ET AL.

[Cite as *State ex rel. Scioto Downs, Inc. v. Brunner*,

123 Ohio St.3d 24, 2009-Ohio-3761.]

*Elections — Mandamus — Challenge under Section 1g, Article II, Ohio Constitution — Failure to request the appropriate relief under the constitutional provision — Requested relief denied.*

(No. 2009-1294 ─ Submitted July 29, 2009 ─ Decided July 31, 2009.)

CHALLENGE UNDER SECTION 1G, ARTICLE II OF THE OHIO CONSTITUTION

and IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1}   This is a purported challenge under Section 1g, Article II of the Ohio Constitution and an original action for a writ of mandamus seeking an order to compel the secretary of state and a board of elections to (1) investigate violations of Ohio election law by circulators of a statewide initiative petition and (2) invalidate certain part-petitions with these violations or issue an order to compel the secretary of state to command the boards of elections to perform these acts.  Relators also seek a peremptory "other" writ under R.C. 2503.40.  Because relators seek relief that is not available in a Section 1g, Article II challenge and have not established their entitlement to relief in mandamus or to an R.C. 2503.40 writ, we deny the requested relief.

**Background of Case**

{¶ 2}   On June 25, 2009, the Ohio Jobs & Growth Committee filed an initiative petition with respondent Secretary of State Jennifer Brunner.  The petition proposed a constitutional amendment to authorize casinos in Cincinnati,

Cleveland, Columbus, and Toledo. In accordance with R.C. 3519.15, the secretary of state transmitted the part-petitions to the county boards of elections for verification of the validity of the part-petitions and the signatures thereon. She also sent Directive 2009-10, setting forth the secretary's instructions on examining and determining sufficiency of the part-petitions and directing each board of elections to determine the sufficiency of the part-petitions and submit a copy of its certification to the secretary by July 16.

{¶ 3} Relators, Scioto Downs, Inc., an Ohio corporation that operates a horse-racing track in southern Franklin County, and Stacy Cahill, the general manager of the track and a registered elector in Franklin County, are opposed to the casino initiative. Relators inspected some of the part-petitions, which led them to question their validity. More specifically, relators contested those part-petitions circulated by certain individuals because allegedly (1) some circulators listed hotels, commercial properties, or other nonresidential addresses as their permanent residential addresses, (2) some circulators listed permanent residential addresses that were the same as those listed for other, unrelated circulators, (3) some circulators listed multiple permanent residential addresses, (4) some part-petitions were circulated by felons, and (5) one circulator may have misrepresented his identity.

{¶ 4} Through various correspondence between relators' counsel and the secretary of state and the boards of elections, relators apprised election officials of their allegations. Relators requested that the secretary of state and the boards of elections investigate the claimed circulator disqualifications and invalidate the defective part-petitions.

{¶ 5} On July 17, relators filed this action, captioned as a "petition for writ of mandamus and original action complaint under Section 1g, Article II of the Ohio Constitution." On July 20, we issued an expedited schedule for responses to the complaint and for the submission of the parties' evidence and

briefs. *State ex rel. Scioto Downs, Inc. v. Brunner*, 122 Ohio St.3d 1468, 2009-Ohio-3527, 909 N.E.2d 1287. On that same date, the secretary of state issued Advisory 2009-08 to the county boards of elections, in which, pursuant to R.C. 3501.05(N)(1), she directed an investigation into the alleged election-law violations in the circulation of the casino-initiative petition.

{¶ 6} The secretary of state certified on July 21 that the casino-initiative petition had sufficient signatures as "found valid by the state's boards of elections to qualify the issue for the November 2009 election ballot." She found that the boards of elections had reported 452,956 valid signatures, which exceeded the 402,275 required to qualify for the ballot, and that the boards further reported that the petition had the valid signatures of more than the 5 percent of the requisite number of electors in 73 Ohio counties, which exceeded the 44-county requirement. Sections 1a and g, Article II, Ohio Constitution. On that same day, the court granted the unopposed motion of the casino-initiative committee and its members ("petitioners") to intervene as additional respondents in this case. *State ex rel. Scioto Downs, Inc. v. Brunner*, 122 Ohio St.3d 1469, 2009-Ohio-3556, 909 N.E.2d 1288

{¶ 7} The parties submitted evidence and briefs, and this cause is now before the court for our consideration of the merits.

## Cause of Action Pursuant to Section 1g, Article II of the Ohio Constitution

{¶ 8} Effective November 4, 2008, the voters approved an amendment to Section 1g, Article II of the Ohio Constitution, which now provides:

{¶ 9} "Any initiative, supplementary, or referendum petition may be presented in separate parts but each part shall contain a full and correct copy of the title, and text of the law, section or item thereof sought to be referred, or the proposed law or proposed amendment to the constitution. * * * To each part of such petition shall be attached the statement of the circulator, as may be required

by law, that he witnessed the affixing of every signature. The secretary of state shall determine the sufficiency of the signatures not later than one hundred five days before the election.

{¶ 10} "The Ohio supreme court shall have original, exclusive jurisdiction over all challenges made to petitions and signatures upon such petitions under this section. Any challenge to a petition or signature on a petition shall be filed not later than ninety-five days before the day of the election. The court shall hear and rule on any challenges made to petitions and signatures not later than eighty-five days before the election. If no ruling determining the petition or signatures to be insufficient is issued at least eighty-five days before the election, the petition and signatures upon such petitions shall be presumed to be in all respects sufficient.

{¶ 11} "If the petitions or signatures are determined to be insufficient, ten additional days shall be allowed for the filing of additional signatures to such petition. If additional signatures are filed, the secretary of state shall determine the sufficiency of those additional signatures not later than sixty-five days before the election. Any challenge to the additional signatures shall be filed not later than fifty-five days before the day of the election. The court shall hear and rule on any challenges made to the additional signatures not later than forty-five days before the election. If no ruling determining the additional signatures to be insufficient is issued at least forty-five days before the election, the petition and signatures shall be presumed to be in all respects sufficient.

{¶ 12} "* * *

{¶ 13} "* * * The foregoing provisions of this section shall be self-executing, except as herein otherwise provided. Laws may be passed to facilitate their operation, but in no way limiting or restricting either such provisions or the powers herein reserved."

4

**{¶ 14}** As amended, Section 1g, Article II specifies that the secretary of state "shall determine the sufficiency of the signatures" not later than 105 days before the election. The secretary has fulfilled her obligation by her certification of July 21.

**{¶ 15}** Relators' challenge under Section 1g, Article II of the Ohio Constitution, as amended, requesting that the secretary and the boards of elections be ordered to investigate the claimed defects and invalidate additional part-petitions, is improper. The secretary of state and the boards have now completed their review of the sufficiency of the petitions and have timely certified their results in accordance with their constitutional and statutory duties. They have no additional duty or authority to further investigate and invalidate additional part-petitions and signatures following the expiration of the constitutional deadline. While this court has "original, exclusive jurisdiction over all challenges made to petitions and signatures upon such petitions under this section," we are not authorized under Section 1g, Article II of the Ohio Constitution to grant the relief that relators request.

**{¶ 16}** We thus deny relators' challenge.

### Mandamus to Compel Investigation and Invalidation

**{¶ 17}** Relators request a writ of mandamus to compel the secretary of state and the Muskingum County Board of Elections to investigate – or compel the secretary of state to order the boards of elections to investigate – the alleged election-law violations by circulators of the casino-initiative petition and to invalidate certain part-petitions. To be entitled to the writ, relators must establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of the secretary of state and the Muskingum County Board of Elections to provide it, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Heffelfinger v. Brunner*, 116 Ohio St.3d 172, 2007-Ohio-5838, 876 N.E.2d 1231, ¶ 13.

**{¶ 18}** Relators have not established their entitlement to the requested relief. The secretary has now ordered an investigation under R.C. 3501.05(N)(1), which is distinct from her constitutional sufficiency determination. Pursuant to R.C. 3501.05(N)(1), the secretary of state is authorized to investigate "the administration of election laws, frauds, and irregularities in elections in any county" and can then "report the violations of election laws to the attorney general or prosecuting attorney, or both, for prosecution." The investigation provided by this statute does not authorize the secretary of state to use these investigative results to invalidate part-petitions after the constitutional deadline for her sufficiency determination has passed.

**{¶ 19}** In addition, relators have not submitted proof that the secretary of state and the boards of elections have validated the part-petitions they contest. For the most part, they have also not submitted the part-petitions that they are challenging as part of their evidentiary submission.

**{¶ 20}** In fact, the casino-initiative petitioners have submitted evidence that rebuts many of relators' claims. For example, the petitioners have established that convicted felon Melissa Smith circulated only one part-petition, which contained 19 signatures, and that the Butler County Board of Elections rejected it. They have also submitted an affidavit of circulator Jamar Owens in which he specifies that although his handwriting and signature may not have been completely consistent on every part-petition, he did in fact circulate each of the part-petitions contested by relators and did personally sign the circulator statements for them.

**{¶ 21}** The petitioners have also introduced evidence indicating that a partial review of relators' summaries of defective part-petitions showed that relators incorrectly reported information concerning the circulator's name or address on 44 out of 330 randomly selected part-petitions. The petitioners also

noted that in their limited review of the contested part-petitions, 19 had already been invalidated by boards of elections.

{¶ 22} Finally, the time for the secretary's sufficiency determination of the signatures in the petition has now expired, and neither she nor the boards of elections have any further duty or authority after certification under the Constitution or any statute to invalidate additional part-petitions and signatures.

{¶ 23} Therefore, we deny relators' request for extraordinary relief in mandamus.

### Relators' Motion for a Peremptory Other Writ and Request for Oral Argument

{¶ 24} We deny relators' motion for a peremptory writ under R.C. 2503.40, which requests the "other" writ as a substitute for an extraordinary writ, i.e., a writ of mandamus. See *State ex rel. Parrott v. Brunner*, 117 Ohio St.3d 175, 2008-Ohio-813, 882 N.E.2d 908, ¶ 11 (court held it would not grant the "other writ" as a substitute for a writ of prohibition in a case instituted against the secretary of state).

{¶ 25} We also deny relators' request for oral argument because the parties' briefs are sufficient to resolve the dispositive legal issues. *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 111 Ohio St.3d 118, 2006-Ohio-5339, 855 N.E.2d 444, ¶ 16.

### Conclusion

{¶ 26} Relators have failed to file a proper challenge under Section 1g, Article II of the Ohio Constitution and have not established their entitlement to either a writ of mandamus or an R.C. 2503.40 writ. Therefore, we deny the requested relief.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Bricker & Eckler, L.L.P., Luther L. Liggett Jr., Anne Marie Sferra, and Vladimir P. Belo, for relators.

Richard Cordray, Attorney General, and Aaron D. Epstein, Michael J. Schuler, and Richard N. Coglianese, Assistant Attorneys General, for respondent Secretary of State Jennifer Brunner.

D. Michael Haddox, Muskingum County Prosecuting Attorney, and Walter K. Chess Jr., Assistant Prosecuting Attorney, for respondent Muskingum County Board of Elections.

Schottenstein, Zox & Dunn Co., L.P.A., Alan G. Starkoff, Matthew L. Fornshell, and Matthew T. Green; and McTigue & McGinnis, L.L.C., Donald J. McTigue, Mark A. McGinnis, and J. Corey Colombo, for intervening respondents.

_____