[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Maras v. LaRose,* Slip Opinion No. 2022-Ohio-3295.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-3295

THE STATE EX REL. MARAS *v*. LAROSE, SECY. OF STATE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Maras v. LaRose,*

Slip Opinion No. 2022-Ohio-3295.]

*Elections—Mandamus—Writ sought to compel secretary of state to certify relator's name to the ballot as an independent candidate for secretary of state—R.C. 3513.262—Secretary acted in clear disregard of law when he refused to count additional verified signatures submitted prior to statutory deadline— Writ granted.*

(No. 2022-1083—Submitted September 15, 2022—Decided September 20, 2022.)

IN MANDAMUS.

————————————

**Per Curiam.**

{¶ 1} In this expedited election case, relator, Terpsehore P. Maras, seeks a writ of mandamus compelling respondent, Ohio Secretary of State Frank LaRose, to certify her name to the November 8, 2022 ballot as an independent candidate for Ohio Secretary of State. We grant the writ and order Secretary LaRose to certify Maras's name to the November ballot.

## I. BACKGROUND

{¶ 2} On May 2, 2022, Maras filed a nominating petition to run as an independent candidate for secretary of state in the November election. According to the secretary's intake form, Maras's filing included 1,339 part-petitions containing 5,873 signatures.

{¶ 3} On June 6, Secretary LaRose issued Directive 2022-36, setting forth procedures for the boards of elections to follow when processing petitions for statewide independent candidates. The directive stated that each board "must complete its review, examination, and verification of the petitions and submit its certification forms to the Secretary of State's Office by **4:00 p.m. on Tuesday, July 5, 2022.**" (Emphasis sic.) Secretary of State Directive 2022-36, Examination and Verification of Petitions from Statewide Independent Candidates, available at https://www.ohiosos.gov/elections/elections-officials/rules/#manual (accessed Sept. 17, 2022).

{¶ 4} In accordance with R.C. 3513.262, Secretary LaRose transmitted Maras's part-petitions to the respective county boards of elections for signature verification. Secretary LaRose provided the boards with a certification form to use for their signature assessments. The form instructed the boards that they must upload the information to SharePoint,[1] along with the scanned part-petitions, no later than 4:00 p.m. on July 5.

{¶ 5} Before 4:00 p.m. on July 5, county boards of elections returned certification forms to Secretary LaRose verifying 5,010 signatures, including 697 from Cuyahoga County and 14 from Columbiana County.

{¶ 6} On July 12, the Cuyahoga County Board of Elections submitted an amended certification form that validated eight additional signatures (increasing the total from 697 to 705). Two days later, the Columbiana County Board of Elections

---

1. SharePoint is a secure file-upload-and-transfer portal maintained by the secretary of state's office.

submitted an amended certification form that validated one additional signature (increasing the total from 14 to 15).

{¶ 7} To qualify for the ballot, Maras needed to submit at least 5,000 valid petition signatures. *See* R.C. 3513.257(A). On July 18, Secretary LaRose informed Maras that she had submitted a sufficient number of valid signatures and that her candidacy was certified to the November ballot. Secretary LaRose's certification did not include the nine additional signatures that were certified as valid by the Cuyahoga and Columbiana County Boards of Elections after July 5.

{¶ 8} On July 30, 2022, Justin Bis filed a written protest against the certification of Maras's candidacy. Bis challenged the validity of 65 of the petition signatures. In addition, he disputed whether Maras had sufficiently disaffiliated from the Republican Party to appear on the ballot as an independent candidate. Secretary LaRose scheduled a hearing on the protest for August 25; former Ohio Supreme Court justice Terrence O'Donnell served as the hearing officer.

{¶ 9} Prior to the hearing, Maras submitted a pleading captioned "motion for summary judgment to dismiss protest." The motion purported to show that 58 of Bis's signature challenges were meritless, "leaving only seven viable challenges," which would not be enough to disqualify Maras from the ballot. Maras also argued that Secretary LaRose's official tally undercounted her valid signature totals. She pointed to the eight additional verified signatures from Cuyahoga County and a wrongly invalidated signature from Marion County. She also referred to an attached affidavit of Benjamin Bawidamann, who purported to find eight wrongly invalidated signatures from Montgomery County.

{¶ 10} In addition, she attached an affidavit from Jalen Ballard, a volunteer for Maras's campaign. Ballard noted the amended certification from Columbiana County and claimed that Fairfield County had also submitted an amended certification after July 5, adding two more signatures to its total. And Ballard purported to show a total undercount of ten signatures on petitions from Butler,

Defiance, Lucas, Ross, Scioto, Union, and Washington Counties. In all, Maras asked the hearing officer to validate an additional 30 signatures.

{¶ 11} The hearing officer denied Maras's motion for summary judgment and denied her request to call a witness regarding the 30 signatures that had allegedly been improperly excluded. Thereafter, the hearing officer issued a report and recommendation, followed by a corrected report and recommendation. The hearing officer rejected Bis's allegation that Maras was not truly independent, because Bis "offered no evidence to support that claim." However, the hearing officer sustained the protest as to 18 signatures. After striking those signatures, the hearing officer recommended that Maras be decertified from the ballot.

{¶ 12} On review, Secretary LaRose[2] adopted most of the hearing officer's conclusions and decided that 17 signatures should be invalidated (out of the 18 that the hearing officer had recommended). On August 30, Secretary LaRose's office informed Maras:

> Pursuant to the adoption of the Hearing Officer's Corrected Report and Recommendation * * *, your petition contains 4,993 valid signatures. Therefore, as you do not have the requisite number of valid signatures, you are decertified and are not eligible to appear on the November 8 General Election ballot.

{¶ 13} On September 2, Maras filed this original action for a writ of mandamus. In her complaint, she seeks relief as to three categories of signatures: (1) nine additional verified signatures from Cuyahoga and Columbiana Counties,

---

2. Because Secretary LaRose had recused himself from matters relating to the November secretary-of-state election, Assistant Secretary of State Kimberly Burns was the person responsible for deciding whether to adopt the hearing officer's recommendation. But for ease of reference and because Secretary LaRose is the respondent in his official capacity in this case, we will refer to him as the decision maker.

(2) 19 allegedly valid signatures from Butler, Defiance, Lucas, Marion, Montgomery, Ross, Scioto, Union, and Washington Counties, and (3) 17 signatures that were disqualified after the August 25 hearing. Maras does not seek relief as to the two additional verified signatures from Fairfield County.

{¶ 14} The parties have submitted briefs and evidence in accordance with this court's scheduling order, 167 Ohio St.3d 1505, 2022-Ohio-3094, __ N.E.3d __, and the case is ripe for decision.

## II. LEGAL ANALYSIS

### A. *The affidavit verifying the complaint*

{¶ 15} Before turning to the merits of the case, we must decide whether to deny relief based on alleged defects in the affidavit supporting Maras's complaint. Secretary LaRose contends that we must dismiss the complaint due to defects in the affidavit. We do not agree.

{¶ 16} A complaint in an original action before this court must be supported by an affidavit specifying the facts on which the claim for relief is based. S.Ct.Prac.R. 12.02(B)(1) and (2); *see also* R.C. 2731.04 ("Application for the writ of mandamus must be by petition, * * * verified by affidavit"). The affidavit must be made "on personal knowledge." S.Ct.Prac.R. 12.02(B)(2).

{¶ 17} Maras's affidavit consists of two pages. The first page reads:

I, Terpsehore P. Maras, having been duly sworn, swear and affirm:

1. I am over eighteen and have personal acknowledgement of the facts outlined below.

2. I am a qualified elector in the State of Ohio and I reside at 50 Public Square, Apt. 1432, Cleveland, OH, 44113, in Cuyahoga County.

> 3. I have reviewed the Complaint for Writ of Mandamus and verify that the facts therein are true and correct.

The first page also contains Maras's digital signature and an unsigned notary statement that states that Maras appeared before a notary and acknowledged signing the affidavit and verified that the facts therein were true. In the space for the notary's signature is a handwritten notation instructing readers to "see attached notary block," below the initials "ALA."

{¶ 18} The second page is captioned "Acknowledgement." It reads, "Before me, a Notary Public in and for said state, personally appeared Terpsehore P. Maras, who acknowledged that he/she/they did sign the aforementioned instrument as their free act and deed." The "acknowledgement" is signed digitally by Adrian L. Adams, a notary public, whose seal appears on the document.

{¶ 19} Secretary LaRose contends that Maras's verification is not an affidavit at all. An affidavit is "a written declaration under oath." R.C. 2319.02. A guide prepared by this court titled *A Guide to Filing in the Supreme Court of Ohio* defines an affidavit as a voluntary, written statement of facts that is sworn to or affirmed before a notary public, that is signed by the affiant and the notary, and that contains the notary's jurat. "Jurat" means a "notarial act" in which the signer gives an oath or affirmation that the statement in the notarized document is true and correct and signs the document in the presence of a notary public. R.C. 147.011(C).

{¶ 20} Secretary LaRose argues that the "acknowledgement" notarized by Adams is not a proper jurat because "[t]he notarial certificate does not indicate the notary administered an oath or affirmation to Relator with regard to the affidavit." That the notary administered the oath is evident, however, when the document is read in full.

{¶ 21} In the first line of her affidavit, Maras represented that she "[had] been duly sworn." To accept Secretary LaRose's construction of the affidavit, we

would have to conclude that Maras appeared before one notary to take the oath and then appeared before a second notary solely to attest that she signed the affidavit "as [her] free act and deed." This is an illogical conclusion. We are satisfied that Maras submitted a valid jurat.

{¶ 22} We likewise reject Secretary LaRose's assertion that the first paragraph of the affidavit indicates that the affidavit was not made on the personal knowledge of the affiant. Rather than "personal *knowledge*," Maras claims in the first paragraph of her affidavit to "have personal *acknowledgement* of the facts." (Emphasis added.) But even though Maras erroneously typed the word "acknowledgement" instead of "knowledge" in the first paragraph of the affidavit, in the third paragraph, Maras attests without caveat that the facts alleged in her complaint for a writ of mandamus are true.

{¶ 23} For these reasons, we reject the secretary's challenge to the affidavit and proceed to consider the merits.

### B. Standard of review

{¶ 24} To be entitled to a writ of mandamus, Maras must establish by clear and convincing evidence that (1) she has a clear legal right to the requested relief, (2) Secretary LaRose has a clear legal duty to provide it, and (3) she does not have an adequate remedy in the ordinary course of the law. *See State ex rel. Linnabary v. Husted*, 138 Ohio St.3d 535, 2014-Ohio-1417, 8 N.E.3d 940, ¶ 13. As to the third element, Maras lacks an adequate remedy in the ordinary course of the law due to the proximity of the election, which is less than 60 days away. *State ex rel. West v. LaRose*, 161 Ohio St.3d 192, 2020-Ohio-4380, 161 N.E.3d 631, ¶ 15.

{¶ 25} The first two elements require us to determine whether in refusing to certify Maras's name to the ballot, Secretary LaRose engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable law. *See State ex rel. Lucas Cty. Republican Party Executive Commt. v. Brunner*, 125 Ohio St.3d 427, 2010-Ohio-1873, 928 N.E.2d 1072, ¶ 9. Maras has not alleged fraud or

corruption. An abuse of discretion "connotes an unreasonable, arbitrary, or unconscionable attitude." *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997).

### C. The nine signatures from Cuyahoga and Columbiana Counties

{¶ 26} In her first proposition of law, Maras contends that Secretary LaRose had a clear legal duty to count the nine additional verified signatures from Cuyahoga and Columbiana Counties. Maras's argument rests on R.C. 3513.262, which provides:

> Each board shall, *not later than the * * * fifteenth day of July*, * * *, examine and determine the sufficiency of the signatures on the petition papers transmitted to or filed with it, and the validity of the petitions filed with it, and shall return to the secretary of state all petition papers transmitted to it by the secretary of state, together with its certification of its determination as to the validity or invalidity of signatures thereon, * * *.

(Emphasis added.) According to Maras, the Revised Code expressly grants the boards until July 15 to submit their certification forms, so Secretary LaRose acted in clear disregard of applicable law when he rejected the amended certification forms received on July 12 and 14.

{¶ 27} Secretary LaRose reads the statutory language differently: He says that it places an outer limit on how much time the boards have to verify petition signatures but that it "does not *prohibit* the Secretary from instructing boards to complete their review and return certification forms before July 15. Nor does it *compel* the Secretary to set July 15 as the certification deadline * * *." (Emphasis sic.) The secretary contends that he acted within his discretion by setting an earlier deadline in Directive 2022-36.

8

{¶ 28} We disagree. By rejecting the Cuyahoga and Columbiana Counties' amended certification forms, Secretary LaRose effectively rewrote the statute, changing "not later than the * * * fifteenth day of July" to "not later than the * * * fifth day of July." If statutory language is clear and unambiguous, we apply the statute as written, without adding or deleting words. *In re N.M.P.*, 160 Ohio St.3d 472, 2020-Ohio-1458, 159 N.E.3d 241, ¶ 21. The secretary has no more authority than the courts to change the language of the Revised Code; he must follow the plain language of the statute enacted by the General Assembly.

{¶ 29} We hold that the secretary acted in clear disregard of applicable law when he refused to count the additional verified signatures from Cuyahoga and Columbiana Counties.

### III. CONCLUSION

{¶ 30} We grant a writ of mandamus ordering the secretary to add nine valid signatures to Maras's total. And because with those additional signatures the total number of petition signatures exceeds the threshold required for ballot access, we order the secretary to certify Maras's name to the November 8, 2022 ballot as an independent candidate for Ohio Secretary of State. Given that our disposition of Maras's first proposition of law resolves this case, we do not address the remaining issues raised by the parties.

Writ granted.

O'CONNOR, C.J., and DONNELLY, STEWART, and BRUNNER, JJ., concur.

DEWINE, J., dissents, with an opinion joined by FISCHER, J.

KENNEDY, J., not participating.

————————————

**DEWINE, J., dissenting.**

{¶ 31} Under Ohio law, a petition for a writ of mandamus "must be * * * verified by affidavit." R.C. 2731.04. Relator Terpsehore Maras's petition is not. In the past, we have strictly enforced this requirement and dismissed defective

filings like Maras's. I would apply the same standard in this case that we have applied in other cases.

{¶ 32} Maras supplemented her mandamus petition with a notarized statement that she calls a "verification affidavit." The notary, in turn, notarized an "acknowledgment." Maras's acknowledgement is atypical in that a mandamus relator normally files a "jurat"—"a notarial act" in which the signer of the document gives an "oath or affirmation" and signs the document "in the presence of a notary public," R.C. 147.011(C). An acknowledgement, by contrast, is "a notarial act" in which the signer of the notarized document "acknowledges" that "the signer has signed" and "understands the document" and "is aware of the consequences of executing the document." R.C. 147.011(A). Clearly then, "[a] jurat is not the same as an acknowledgment." 1A Corpus Juris Secundum, Acknowledgments, Section 1 (2022). The key difference is that an acknowledgment is not made under oath. *MountainView Hosp., Inc. v. Eighth Judicial Dist. Court of Nevada*, 128 Nev. 180, 187, 273 P.3d 861 (2012); *Matthews v. Kentucky*, 163 S.W.3d 11, 25 (Ky.2005).

{¶ 33} That distinction is dispositive. Mandamus petitions must be "verified by affidavit," R.C. 2731.04, and affidavits must be made "under oath," R.C. 2319.02. The acknowledgement Maras filed gives no indicia of a sworn oath. Our precedent says that the document Maras filed "cannot be considered an affidavit." *In re Disqualification of Pokorny*, 74 Ohio St.3d 1238, 657 N.E.2d 1345 (1992).

{¶ 34} Maras did not comply with R.C. 2731.04's verified-by-affidavit requirement. When the "respondent in a mandamus action raises [an] R.C. 2731.04 defect and relators fail to seek leave to amend their complaint to comply with R.C. 2731.04, the mandamus action must be dismissed." *Blankenship v. Blackwell*, 103 Ohio St.3d 567, 2004-Ohio-5596, 817 N.E.2d 382, ¶ 36. Rather than heed this evenhanded command, the majority grants one litigant an exemption. This comes

at the expense of a predictable rule of law that applies equally to all.  I respectfully dissent from the majority's judgment granting an extraordinary writ.

FISCHER, J., concurs in the foregoing opinion.

_____

Warner Mendenhall and Logan Trombley, for relator.

Dave Yost, Attorney General, and Julie M. Pfeiffer, Heather L. Buchanan, Ann Yackshaw, and Allison D. Daniel, Assistant Attorneys General, for respondent.

_____